## DELAWARE, L. & W. RY. CO. v. JOHNSON-BROWN CO.

(District Court, S. D. Georgia, Albany Division. February 10, 1921.)

### No. 47.

**Carriers ⬤══193—Connecting carrier cannot recover freight from shipper on shipment missent by initial carrier.**

A connecting railroad cannot recover its freight charges on a carload of merchandise from the shipper, where the car was billed over its line by the initial carrier in violation of its contract with the shipper, as changed before the shipment was forwarded, which required consignment of the car to a different destination, and as a result of the mistake the carload, which was perishable, was lost to the shipper.

At Law. Action by the Delaware, Lackawanna & Western Railway Company against the Johnson-Brown Company. Judgment for defendant.

See, also, 239 Fed. 590.

James Tift Mann, of Albany, for plaintiff.
R. H. Ferrell, of Albany, Ga., for defendant.

BEVERLY D. EVANS, District Judge. This is a suit by the terminal carrier against the shipper to recover freight charges, under the following stipulation of facts:

"On July 17, 1912, the defendants delivered to the Gulf Line Railway Company, at Sylvester, one carload of watermelons, loaded in Atlantic Coast Line Railway car No. 17313 for shipment from said Sylvester to Syracuse, N. Y., and then and there consigned said car to one T. H. Whitcomb, in said Syracuse, all as per the bill of lading hereto attached. as Exhibit A. The melons were shipped under said bill of lading and carried over the lines of the said Gulf Line Railway, as the initial carrier, from said Sylvester, Ga., and over the railways of several intermediate carriers, and over the lines of the plaintiff as last connecting carrier to their point of destination named in said attached bill of lading, which bill of lading was duly received and acted upon by plaintiff as the last connecting carrier handling said shipment, and plaintiff had. as a matter of fact, no knowledge of any new contract of shipment. If the defendants are liable at all, it is for the amounts as set out in plaintiff's petition.

"That the next day after the issuance and receipt of aforesaid bill of lading, and before the car of melons had left Sylvester or the point of origin of shipment, defendants notified in person the aforesaid agent for said Gulf Line Railway Company, who issued the aforesaid bill of lading, that they wished to cancel the former shipping of said car of melons to Syracuse, N. Y., and take new bill of lading for shipment of the said car to J. B. Hayes Company, at

Nashville, Tenn., and in pursuance of said new shipping instructions the defendants' copy of the aforesaid bill of lading, reading Syracuse, N. Y., as destination, was surrendered to said agent, and a new bill of lading was issued to defendants by said agent of said Gulf Line Railway Company, the original of which is hereto attached, as Exhibit B; but, contrary to said new shipping instructions, and the said new bill of lading, and said new contract of shipment, said car was transported to Syracuse, N. Y., as per the first bill of lading attached as Exhibit A aforesaid. It is further agreed as a fact that said car of melons was a total loss to defendants in that they never received any proceeds from said car."

I construe the stipulation of the parties to mean that the consignor and receiving carrier entered into a contract to carry the car of melons to Syracuse, N. Y., but before the actual shipment was made the original contract of shipment was rescinded, and a new contract was substituted therefor, whereby the receiving carrier undertook to carry the melons to Nashville, Tenn., and a new bill of lading was issued for the carriage of the melons to Nashville. Notwithstanding the abrogation of the first contract, and the entering into a new contract for the carriage of the melons to a different point, the receiving carrier acted on the abrogated contract, and caused the melons to be transported to the destination given in such abrogated contract. Under these facts I do not think that the connecting carrier, carrying the goods to the point of destination in the rescinded contract, is entitled to recover of the shipper freight for that service.

The receiving carrier was not the agent of the shipper for a transportation of the goods to Syracuse, N. Y., because that contract had been mutually terminated by it and the shipper before the goods started. By the execution of the new contract as a substitute for the first, the receiving carrier became the agent of the shipper only with respect to the carriage of the goods to Nashville, Tenn. It was not the fault of the shipper that the receiving carrier negligently acted on the rescinded contract.

This is not a case of a secret contract between the receiving carrier and the shipper with respect to amount of freight charges or as to routing, as were the cases relied on by the attorney for the connecting railroad company. It is a case of a shipment by a receiving carrier to a destination different from that of the contract. The initial carrier stood in relation to the shipper just as if only one contract of carriage was made and the destination of the goods was Nashville, Tenn. If it wrongly routed the goods to a different destination, it was without authority from the shipper to contract with a connecting carrier in aid of a wrongful diversion, and neither it nor its connecting carrier can lawfully charge freight to the shipper for such wrongful diversion. The connecting carrier's remedy for its freight charges is against the initial carrier, and not against the shipper, with whom it had no privity of contract.